IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No. 1:23-cv-03895-JGLC

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

     Plaintiff,

v.

CHICKEN JOE'S, LLC,

     Defendant.

_____

## MOTION FOR DEFAULT FINAL JUDGMENT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant Chicken Joe's, LLC ("Defendant"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.     On May 9, 2023, Plaintiff filed its Complaint in this action.  The Complaint contains a single cause of action for copyright infringement against Defendant. See D.E. 1.

2.     On May 15, 2023, Defendant was served with a copy of the Summons and Complaint in this action.  See D.E. 8.

3.     On June 14, 2023 (following expiration of Defendant's response deadline), Plaintiff filed its Request for Clerk's Certificate of Entry of Default. See D.E. 14.

4.     On June 14, 2023, the Clerk entered a Clerk's Default [D.E. 15] against Defendant.

## FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT[1]

**I.      Plaintiff's Business and History[2]**

5.      Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

6.      Plaintiff operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

7.      Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

8.      Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

9.      Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used).  Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end

---

[1]      When a defendant defaults, "the Court accepts as true all well-pleaded factual allegations included in Whitehead's complaint". Whitehead v. Mix Unit, LLC, 2019 U.S. Dist. LEXIS 15560 (S.D.N.Y. Jan. 31, 2019); see City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)).

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint, the July 27, 2023 Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A," and the July 28, 2023 Declaration of Daniel DeSouza (the "DeSouza Decl."), a true and correct copy of which is attached hereto as Exhibit "B."

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

users' (i.e. grocery stores, meat/dairy sellers, etc.).

10.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

11.     This lawsuit concerns one (1) photograph titled "ChickenFried013" (the "Work") owned by Plaintiff for which Plaintiff serves as the licensing agent.  The Work is available for license on the above-stated terms.

12.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on September 20, 2016 and was assigned Registration No. VA 2-017-741.  A copy of the Certificate of Registration pertaining to the Work is attached to the Complaint as Exhibit A thereto.

## III.    Defendant's Unlawful Activities

13.     Defendant is a restaurant specializing in chicken dishes in New Rochelle, New York.

14.     Defendant advertises/markets its business primarily through its website (https://www.chickenjoesnewrochelle.com/index.html), social media (e.g., https://twitter.com/chickenjoes), and other forms of advertising.

15.     On a date after Plaintiff's above-referenced copyright registration of the Work,

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

Defendant published the Work on its Twitter page (at https://twitter.com/chickenjoes and https://twitter.com/WGNAFM/status/1280949896992915462?cxt=HHwWjICwlaDJ7MYjAAAA ):



16.     A true and correct copy of screenshots of Defendant's social media, displaying the copyrighted Work, is attached to the Complaint as Exhibit B thereto.

17.     Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its website/advertising or for any other purpose – even though the Work that was copied is clearly professional stock photography that would put Defendant on notice that the Work was not intended for public use.

18.     Defendant utilized the Work for commercial use – namely, in connection with the marketing of its business.

19.     Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

commercial use.

20.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc. To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

21.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

22.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in approximately December 2022.

23.     Following Plaintiff's discovery of Defendants' infringement, Plaintiff retained counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) an initial infringement notice to Defendant to notify it of the impermissible use. Plaintiff (through counsel) then sent a follow up email to Defendants. In approximately March 2023, Plaintiff's counsel spoke with Defendant. Indeed, rather than acknowledge responsibility or attempt to negotiate in good faith, Defendant (through its principal John Sorbella) instead responded to Plaintiff's counsel with an obscene tirade:

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

**From:** john <john@faceliftsrenovations.com>
**Sent:** Friday, March 31, 2023 6:09 PM
**To:** Piero Ruiz Rodriguez <piero@copycatlegal.com>; johnsor@optonline.net; chicken.joes@yahoo.com
**Subject:** RE: 03/31: Prepared Food Photos, Inc. v Chicken Joe's, LLC

How bout you go fuck your clients mother then go fuck yourself. Send me proof of that.
Simply doing that does not change the fact that you are a dirt bag trying to take advantage of hard working people.

Now fuck off...you hear??


John Sorbella


## ARGUMENT

### I.    Applicable Legal Standards

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment."  Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011).  First, under Federal Rule 55(a), the plaintiff must obtain a clerk's entry of default.  Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  Second, under Rule 55(b), the plaintiff may apply for entry of default judgment by the clerk "[i]f the plaintiff's claim is for a sum certain," or by the court "[i]n all other cases." Fed. R. Civ. P. 55(b)(1), (2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment and is barred from contesting on appeal the facts thus established." Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment.  See Brown v. Gabbidon, 2007 U.S. Dist. LEXIS 35134 (S.D.N.Y. May 14, 2007); Sony Pictures Home Entm't, Inc. v. Chetney, 2007 U.S. Dist. LEXIS 13314, 4-5 (S.D.N.Y. 2007). "While a complaint . . . does not need detailed factual allegations," a

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

By failing to answer the Complaint, a defendant is deemed to have admitted the factual allegations in the Complaint. See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability."); Rolex Watch, U.S.A., 2011 U.S. Dist. LEXIS 32249, at *5-6, ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."). But before entering default judgment, the Court must review the allegations to determine whether a plaintiff has stated a valid claim for relief. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).

If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. See Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); Coventry Enters. Ltd. Liab. Co. v. Sanomedics Int'l Holdings, Inc., 2017 U.S. Dist. LEXIS 122615, at *3 (S.D.N.Y. July 25, 2017); Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

## II.    Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "Copyright infringement [has] two elements [that] must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, (1991)).

### 1.      Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).  Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication.  The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim. See, e.g., Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to find invalidity of the registration because the registration was made over five years  after the Jesse Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot find, as a matter of law, that the certificate of registration is invalid."); Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans."). As succinctly explained in <u>Southall v. Force Partners, LLC</u>, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not ***forbid***[3] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. <u>Yurman Design, Inc. v. Golden Treasure Imps., Inc.</u>, 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright<u>); Telerate Sys., Inc. v. Caro</u>, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). ***In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's evidentiary weight can be presented to the Court for decision***.[4] The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above. By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2.    Defendant Copied the Work

To satisfy the second element of copyright infringement, "the copyright owner must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 110 (2d Cir. 2001)

---

[3]       Emphasis in original.

[4]       Emphasis added.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

(internal quotation marks omitted).  A plaintiffs may show actual copying through direct or indirect evidence.  See Hamil Am., Inc. v. GFI, Inc., 193 F.3d 92, 99 (2d Cir. 1999).  Copying may be proven indirectly by showing the "defendants had access to the copyrighted work and [that there are] similarities that are probative of copying between the works." Id.  To meet the element of substantial similarity, a plaintiff must show that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Smith v. Weinstein, 578 F. Supp. 1297, 1302 (S.D.N.Y. 1984) (quotation omitted).

Here, the screenshots of Defendant's social media unequivocally shows Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

III.     **Defendant's Infringement was Willful**

Willful infringement occurs when "the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." Mattel, Inc. v. 2012Shiningroom2012, No. 18-cv-11648 (PKC), 2020 U.S. Dist. LEXIS 176838, at *19 (S.D.N.Y. Sep. 25, 2020) (quoting Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005)). "Moreover, this Court may infer that Defendants willfully infringed Plaintiffs' copyrights because of Defendants' default." Arista Records, Inc. v. Beker Enters., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003); see also Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (inference of willfulness drawn by "defendant's failure to appear and defend

this action," particularly in light of plaintiff's allegation of willfulness); <u>Original Appalachian v. Yuil Int'l Corp.</u>, 5 U.S.P.Q.2d (BNA) 1516, 1524 (S.D.N.Y. 1987) ("willfulness may be inferred from a defendant's failure to appear and defend in an action such as this"). When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." <u>Cable/Home Communication Corp. v. Network Productions</u>, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Here, Plaintiff took the extra step of notifying Defendant of its infringement pre-lawsuit. Defendant's refusal to pay a reasonable licensing fee, refusal to substantively communicate, and refusal to participate in this lawsuit demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.

Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

## IV.   Plaintiff's Damages

### A.   *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are "primarily measured by the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement." <u>Cordon Holding C.B. v. Nw. Publ'g Corp.</u>, 2005 U.S. Dist. LEXIS 3860, at *16 (S.D.N.Y. Mar. 9, 2005) (quoting See Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co., Inc., 807 F.2d 1110, 1118 (2d Cir. 1986) (internal quotations

omitted); see Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010) (actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright.").

The copyright owner may also recover the fair market value of the licensing fee that would have been charged for the work that was infringed.  McCarthy v. Stollman, 2010 U.S. Dist. LEXIS 164542, at &16 (S.D.N.Y. Feb. 23, 2010). To demonstrate entitlement to a reasonable license fee, the fair market value of an infringed work may be established by "evidence of benchmark licenses, that is, what licensors have paid for use of similar work."  Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261 (M.D. Fla. 2008) (citing Montgomery v. Noga, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999)).

As set forth above and in the Jones Decl. (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at $999.00 per month with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year).  Plaintiff does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of

Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees. Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15–20-year period of time (with new creative works being made through the present date). Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography. All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal. For any image (including the one at issue in this lawsuit), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1-2 for inclusion in Plaintiff's library. For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

The aforementioned infringement notice shows that the Work was published by Defendant at least as of December 2, 2022 (at which time the Work appeared on Defendant's social media). Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and/or removed from Defendant's social media.

For each year that Defendant published the Work, Plaintiff would be owed an annual license fee of $11,988.00. Here, it is known that the Work was published as of December 2, 2022

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

(as evidenced by the infringement notice attached to the Jones Decl.). As a result of Defendant's failure to participate in this lawsuit, Plaintiff has no information to discern when the Work was removed from Defendant's social media. Plaintiff proffers that the cost of 1x annual license payment ($11,988.00) is the most accurate measure of Plaintiff's actual damages based on presently-known facts.

In <u>Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC</u>, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages:

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

<u>Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC</u>, Case No. 21-82129-cv-Middlebrooks/Matthewman.  The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts.  <u>See, e.g.</u> <u>Prepared Food Photos, Inc. v. 193 Corp.</u>, No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; <u>Prepared Food Photos, Inc. v. Miami Beach 411 Corp.</u>, No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee

x 3 years of usage of a single photo); <u>Prepared Food Photos, Inc. v. Fat Daddy Co.</u>, No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Perry Wings Plus, Inc.</u>, No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); <u>Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc.</u>, No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for  3-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

B.      *Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement*

Pursuant to 17 U.S.C. § 504(c), Plaintiff hereby elects to recover statutory damages for Defendants' infringement of Plaintiff's exclusive rights in the copyrighted Work, and enhancement of its statutory award based upon the willfulness of such infringement.  Where (as here) willful infringement has occurred, courts in this Circuit will generally look to a plaintiff's actual damages and award 3x – 5x to properly account for statutory damages. See, e.g., Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work.  See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendants' conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

> that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather information about the extent of Defendant's use of the Work/profits derived therefrom. Plaintiff's licensing structure is a strong proxy for calculating damages. Likewise to Judge Middlebrooks' finding in Patriot Fine Foods, and given the circumstances of the instant case, Plaintiff submits that an award of statutory damages in the amount of ***$23,976.00*** ($11,988.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law.  Plaintiff requests the Court to apply the same multiplier Judge Middlebrooks applied in Patriot Fine Foods, wherein his honor doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's actual damages, it is well within the Court's discretion to award substantial damages to the Plaintiff upon a finding of willfulness. For example, in Corson v Brown Harris Stevens of the Hamptons, LLC, the court found that willfulness entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C. § 504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual damages):

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

So first the main issue was whether defendant's infringement was willful. I find here willfulness entitles plaintiff to the enhanced statutory damages provided by 17 U.S.C. Section 504(c)(2). The standard for willful infringement is not only knowledge on the defendant's part that what it did was infringement but also reckless disregard of the practice of protecting creativity, the very purpose of copyright. When the plaintiff can demonstrate, either directly or through circumstantial evidence, that defendant had knowledge that its actions constituted infringement, or recklessly disregarded that possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. Section 504(c)(2) are appropriate.

Plaintiff successfully proved that her photograph was copyright protected. It's clear that defendant, as a sophisticated business, knew there was copyright involved and did nothing to check those rights or to clear permission to reprint from the photographer.

I find that the infringement was willful, and I find that the conduct of indifference to the rights of others was egregious and that the statutory damages should be $25,000. There were no actual damages.

Corson was a fully litigated case in which, though the Judge found that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long experience not merely compels restitution of profit and reparation from injury but also a desire to discourage wrongful conduct." Corson (referencing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952)).

### C.    Full Costs and Reasonable Attorneys' Fees are Appropriate

Pursuant to 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party… the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." Upon entry of a final judgment, Plaintiff is the prevailing party in this action. In view of the willful nature of Defendant's infringement and its failure to defend or otherwise participate in this action, leading to unjustified delays and increased costs and fees, an award of full costs and attorney's fees to Plaintiff is appropriate. Accordingly, Plaintiff requests

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

the Court to award costs and attorney's fees in the amount of $2,875.32 consisting of costs in the amount of $500.32 and fees in the amount of $2,375.00.[5] The amount and reasonableness of the costs and fees are established by the DeSouza Decl.

## V.   Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action.  Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas, will not

---

[5]      Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920 generally provide the process by which a prevailing party may recover fees/costs (respectively).  While a prevailing party must ordinarily file a post-judgment motion and/or Bill of Costs, many courts allow such to be requested in a default judgment motion in the interest of judicial economy and to avoid successive motions against a non-appearing defendant.  See, e.g. Wade v. Allyrides LLC, No. 2:21-cv-393-SPC-NPM, 2022 U.S. Dist. LEXIS 55883, at *2 (M.D. Fla. Mar. 11, 2022) (recognizing that Rule 54(d) requires a post-judgment motion for attorneys' fees but considering request for award within motion for default judgment "in the interests of judicial economy"); Griego v. Ariz. Partsmaster, Inc., Civil Action No. 20-cv-0639-WJM-MEH, 2021 U.S. Dist. LEXIS 75499, at *11 (D. Colo. Apr. 20, 2021) (awarding attorneys' fees and costs requested as part of motion for default judgment).

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting it from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendants; award Plaintiff the principal sum of **$27,453.82**, which consists of $23,976.00 for Defendants' infringement of the Work, Plaintiff's costs in the amount of $500.32, and Plaintiff's attorneys' fees in the amount of $2,977.50 (as set forth in the DeSouza Decl.), permanently enjoin Defendants from infringing activities; and for any other relief the Court deem just and proper.  A proposed order is filed herewith.

Dated: July 28, 2023.                    COPYCAT LEGAL PLLC
                                         3111 N. University Drive
                                         Suite 301
                                         Coral Springs, FL 33065
                                         Telephone: (877) 437-6228

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228

dan@copycatlegal.com
christine@copycatlegal.com

By: /s/ Daniel DeSouza____
      Daniel DeSouza, Esq.
      Christine Zaffarano, Esq.

### CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on July 28, 2023, the foregoing document (including all attachments thereto) was served via US Mail on Chicken Joe's, 768 North Avenue, New Rochelle, NY 10801.

/s/ Daniel DeSouza
Daniel DeSouza, Esq.

COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL  33065
TELEPHONE (877) 437-6228