**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
PREPARED FOOD PHOTOS, INC.,

                          Plaintiff,                **REPORT &**
                                           **RECOMMENDATION**

                -against-              **23-cv-3895 (JGLC) (JW)**

CHICKEN JOES, LLC,

                          Defendant.
------------------------------------------------------------------X

**To the Honorable Jessica G. L. Clarke, United States District Judge:**

On August 1, 2023, this Court was referred this action for a Report & Recommendation on the instant Motion for Default Judgment. Dkt. No. 21. Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff") brought this action for copyright infringement against Chicken Joe's, LLC ("Defendant") on May 9, 2023. Dkt. No. 1 (the "Complaint" or "Compl."). Plaintiff filed the instant Motion for Default Judgment seeking (1) a permanent injunction enjoining Defendant from continuing to infringe on Plaintiff's copyright and (2) a sum of $27,453.82 consisting of $23,976.00 in statutory damages for copyright infringement, $2,977.50 in attorneys' fees, and $500.32 in costs. Dkt. No. 17 (the "Motion"). Plaintiff also filed supporting declarations from Rebecca Jones, Dkt. No. 18 ("Jones Decl."), and Plaintiff's counsel Daniel DeSouza. Dkt. No. 19 ("DeSouza Decl."). For the reasons stated below this Court recommends that Plaintiff's Motion for Default Judgment be GRANTED in part.

## BACKGROUND

Plaintiff licenses professional photographs for the food industry on a subscription basis. Compl. ¶¶ 6-7. Plaintiff charges clients (generally grocery stores, restaurant chains, food service companies, etc.) a minimum monthly fee of $999.00 to gain access to its library of professional photographs. Id. ¶ 8. Plaintiff does not license or sell individual photos. Id. ¶ 9. Plaintiff's standard licensing terms require subscribers to commit to a minimum 12-month subscription. Motion at 2. Therefore, "a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year." Id. at 12. Plaintiff's licensing terms make clear that all copyright ownership remains with Plaintiff, and customers are not permitted to transfer, assign or sub-license any of Plaintiff's photographs to another person or entity. Compl. ¶ 10.

The Complaint alleges that Plaintiff created a particular photograph titled "ChickenFried013" in 2005 (the "Photograph"). Compl. ¶ 11. Plaintiff further asserts that the Photograph was registered by Plaintiff with the Register of Copyrights on September 20, 2016, and assigned the registration number: VA 2-017-741. Id. ¶ 12.

Defendant is a restaurant that specializes in chicken dishes in New Rochelle, New York and advertises its business through social media. Compl. ¶¶ 14-15. The Complaint states Defendant is not (and had never been) licensed to use or display the Photograph. Id. ¶ 18. The Complaint further alleges that on a date after the copyright was registered, Defendant published the Photograph on its social media

account through a repost[1] on Defendant's social media page. Id. ¶ 16. The Court notes that the screenshot provided by Plaintiff shows Defendant's social media page with a repost containing a photo and a link to an article titled "VOTE: The Capital Region's Best Fried Chicken," excerpted in relevant part below:



Compl. ¶ 16.

Plaintiff argues Defendant utilized the Photograph for the commercial use of marketing Defendant's business. Compl. ¶ 19. Plaintiff states they discovered Defendant's unauthorized use/display of the Photograph in December 2022 and notified Defendant in writing through their agents. Id. ¶ 21. Plaintiff alleges that rather than acknowledging responsibility, Defendant responded with an "obscene tirade." Id. ¶ 22. On June 14, 2023, the Clerk of the Court entered a clerk's certificate

---

[1] Meaning that the post was originally on another's social media account and Defendant's reposted it onto their social media page with attribution to the original posting account.

of default. Dkt. No. 15. To date, Defendant has not appeared in this action or answered Plaintiff's claims.

## LEGAL STANDARD

"[W]here a party fails to respond, after notice[,] the court is ordinarily justified in entering judgment against the defaulting party[.]" Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984) (citing Fed. R. Civ. P. 55(b)(2)). "Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, the clerk of the court enters a party's default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend in the action, and that failure is shown by an affidavit or otherwise. Fed. R. Civ. P. 55(a). Then, the Court may enter a default judgment upon application of a party. Fed. R. Civ. P. 55(b)(2).

By failing to answer the Complaint, a defendant is deemed to have admitted the factual allegations in the complaint. Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-CV-07953-ER, 2023 WL 2955298, at *3 (S.D.N.Y. Apr. 14, 2023). However, before entering a default judgment, the Court must review the allegations to determine whether the plaintiff has stated a valid claim for relief. Id. (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)). If the complaint alleges a valid claim for relief, the Court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). The Court is not required to hold an evidentiary hearing on damages under Fed. R. Civ. P. 55. Generally, no hearing is

necessary where the plaintiff seeks statutory damages in a copyright infringement action. See Hirsch v. Sell It Soc., LLC, No. 20-CV-153 (LTS)(BCM), 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020).

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] . . . is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). To prevail in a copyright infringement action, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 1:22-CV-07953-ER, 2023 WL 2955298, at *3 (S.D.N.Y. Apr. 14, 2023) (citing other sources).

## DISCUSSION

To secure a default judgment, Plaintiff must establish (i) Defendant's liability for copyright infringement, (ii) Plaintiff's entitlement to damages, (iii) Plaintiff's entitlement to attorneys' fees and costs, and (iv) Plaintiff's entitlement to injunctive relief. See, e.g., Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, 2023 WL 4234821 (N.D.N.Y. June 28, 2023).

### A. Copyright Infringement

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 327

5

(S.D.N.Y. 2021) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).

With respect to prong one, Plaintiff claims ownership of a valid copyright in the Photograph. Motion at 8. A certificate of registration made before or within five years after first publication of a work constitutes *prima facie* evidence of the validity of the copyright. 17 U.S.C. § 410(c). "The evidentiary weight to be accorded [a] certificate of a registration made thereafter [is] within the discretion of the court." Id. Post-five-year certificates may still qualify as *prima facie* evidence of a valid copyright. Yurman Design, Inc. v. Golden Treasure Imports, Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003). In Yurman Design, Inc., 275 F. Supp. 2d at 515-16, the Court considered post-five year certificates *prima facie* evidence of a valid copyright, where the record revealed no evidence raising any "question as to the validity of the copyrights covered by the registration certificates." Here, the Photograph was registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a) on September 20, 2016. Compl. ¶ 12. Plaintiff concedes it was not registered until later than five years from the first publication. Motion at 8. However, there is no evidence raising any suspicion about the validity of the copyright, and this Court will consider the certificate of registration *prima facie* evidence of a valid copyright.

To satisfy prong two, Plaintiff must demonstrate "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 110 (2d Cir. 2001)

(quoting Hamil Am. Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999)).  "Actual copying may be shown by direct or indirect evidence; indirect evidence of copying includes proof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works." Hamil Am. Inc., 193 F.3d at 99.

Plaintiff asserts that "screenshots of Defendant's social media unequivocally show Defendant's copying of the [Photograph]."  Motion at 10.  The post on Defendant's social media page is a repost from another account.  Compl. ¶ 16.  The original post was posted by a user with the handle "@WGNAFM" and the Complaint does not indicate whether that entity was licensed to use or display the Photograph at issue.  See Compl.  While the Court is ultimately persuaded that the repost constitutes "copying" of the Photograph, the Court believes that the relative novelty of the issues at hand warrant further discussion.

1. **Whether the Repost on Social Media Constitutes an Actual Copy of Plaintiff's Work**

The Copyright Act defines "copies" as "material objects . . . by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 101.  Further, the Copyright Act defines the display of a work as "to **show a copy** of it, either directly or by means of . . . any other device or process . . ." Id. (emphasis added).

There is some dispute among legal scholars about whether social media reposts can constitute direct copyright infringement.  In a May 2020 blog posted by Eric

7

Goldman, Professor of Law and Co-Director of the High Tech Law Institute, Santa Clara University School of Law, he opined, "[t]here is only one right answer to the question of whether retweeting can constitute direct copyright infringement. It can't. Otherwise, the world will burn up in a fiery ball of copyright lawsuits against retweeters[.]" Eric Goldman, Can a Retweet Constitute Copyright Infringement? Uh …, Cyberspace Lawyer (May 2020), 25 No. 4 Cyberspace Lawyer NL 5.  Conversely, a Tulane Journal of Technology and Intellectual Property article argues, "[a]lthough the retweet still indicates the original source of the tweet, this shared tweet is still contrary to the owner's right of distribution."  Caroline Russ, Tweet Takers & Instagram Fakers: Social Media & Copyright Infringement, 22 Tul. J. Tech. & Intell. Prop. 205 (2020).

In a series of cases brought by plaintiff Dr. Keith F. Bell against multiple defendants, Dr. Bell alleges that various entities infringed on his copyright by retweeting passages of his book without attribution.  In Bell v. Chicago Cubs Baseball Club, LLC, No. 19-CV-2386, 2020 WL 550605, at *3 (N.D. Ill. Feb. 4, 2020), a defendant filed a motion to dismiss arguing that a retweet could not, as a matter of law, generate an "actionable copy" of copyrighted material.  The court in Bell v. Chicago Cubs Baseball Club, LLC denied the motion to dismiss and declined to decide the issue as a matter of law at that stage.  Id.  While this case is not binding precedent in this jurisdiction, it provides valuable insight into how another court has conceptualized the issue of social media reposts in the context of a copyright infringement action.

Courts in this District have defined the terms of the Copyright Act very broadly, encompassing a variety of uses on social media. In Iantosca v. Elie Tahari, Ltd., No. 19-CV-04527 (MKV), 2020 WL 5603538 (S.D.N.Y. Sept. 18, 2020), this Court concluded that there was "no genuine factual dispute concerning the second element of Plaintiff's copyright infringement action" where defendant did not dispute that the subject photograph was copied and "direct, uncontested evidence" showed the subject photograph posted on defendants' social media page. Similarly, here, Defendant has not appeared to challenge that it copied the Photograph and Plaintiff has provided evidence of the Photograph on Defendant's alleged social media page.

Additionally, in Goldman v. Breitbart News Network, LLC, 17-cv-3144 (KBF), 302 F. Supp. 3d 585 (S.D.N.Y. 2018), this Court addressed whether embedded messages containing a photograph constituted a "display" of work within the meaning of the Copyright Act. This Court noted that the Copyright Act was "plainly drafted with the intent to sweep broadly," and found that the embedding process in question did constitute display for the purpose of the Copyright Act because no physical possession of an image was necessary to violate the Act. Id. at 593.

Similarly, here, considering the broad language of the terms at issue, the repost of the article with the copyrighted Photograph falls within the plain meaning of the Copyright Act. Under the Act, a "copy" is defined broadly to include **material objects** . . . **from which the work can be perceived**. 17 U.S.C. § 101 (emphasis added). This language plainly applies to a repost on social media. Further, a repost on social media "shows a copy" of works on the social media page of the reposting

9

party, which constitutes a "display" of work as defined by the Copyright Act 17 U.S.C. § 101. Therefore, this Court is satisfied that the repost on social media constituted an actual copy of Plaintiff's work.

### 2. Substantial Similarity Test

Substantial similarity is shown where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Ideal Toy Corp. v. Fab-Lu Ltd. (Inc.), 360 F.2d 1021, 1022 (2d Cir. 1966). In the instant action, Plaintiff alleges Defendant published a duplicate image of the Photograph. Motion at 10. This Court agrees. The Photograph and Defendant's repost displayed in the Compl. ¶ 16 look identical and this Court is satisfied that the substantial similarity test is met. Therefore, this Court concludes that both elements of a copyright claim are met and recommends a finding that Defendant is liable for copyright infringement.

### 3. Willfulness

The Copyright Act allows a court to increase the award of statutory damages to a sum of not more than $150,000, if the Court finds the defendant willfully violated the statute. See 17 U.S.C. § 504(c)(2). The statute requires a minimum of $200 in statutory damages even in the absence of willful conduct, where the Court finds the infringer "was not aware and had no reason to believe that [their] acts constituted an infringement of copyright." Id. This Court understands the intent of the statute and the importance of protecting original works, but has concerns about the strict liability standard considering the scope and scale of the social media implications in the

context of the Copyright Act. Social media is ubiquitous, as are reposts of content created by other users. An innocent infringer need not be aware of or even have reason to believe their conduct is infringing in order to be liable. A liberal interpretation of the Copyright Act, therefore, could open the floodgates to endless litigation. This is especially salient because many potential defendants could decline to answer because the cost of litigation would likely outweigh the mandatory statutory damages amount. However, in the instant action, Plaintiff alleges Defendant was not an innocent infringer and instead acted willfully in defaulting. Motion at 10-11. Plaintiff points to Defendant's response to Plaintiff's notice of infringing conduct as clear evidence of that willfulness. Id. at 11.

To demonstrate willful infringement under the Copyright Act, a plaintiff must show "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard ... or willful blindness." Mattel, Inc. v. 2012SHININGROOM2012, No. 18-CV-11648 (PKC), 2020 WL 5743517, at *7 (S.D.N.Y. Sept. 25, 2020) (quoting another source). Additionally, Courts in this District have inferred willful conduct where the Defendant failed to appear and defend in an action. See, e.g., Fallaci v. New Gaz. Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983). While this Court believes there are a variety of reasons that a defendant would not appear and defend (including the cost of litigation in a strict liability action), Defendant's actions after notice of the infringing Photograph clearly shows willfulness. When Plaintiff attempted to notify Defendant of the unauthorized use of the Photograph, Defendant responded with an "obscene

11

tirade." Compl. ¶¶ 21-22. This Court finds this conduct to be clear evidence of willful conduct.

### B. Damages

Plaintiff seeks an award of statutory damages in the amount of $23,976.00 ($11,988.00 for a year's subscription multiplied by 2). Motion at 17. In a copyright infringement action, an infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer or (2) statutory damages in a sum of not less than $750 or not more than $30,000 as the court considers just." Hirsch v. Sell It Soc., LLC, No. 20-CV-153 (LTS) (BCM), 2020 WL 5898816, at *3 (S.D.N.Y. Oct. 5, 2020) (quoting 17 U.S.C. §§ 504(a), (c)(1)) (internal quotation marks omitted). Within the statutory limits, the Court has broad discretion in awarding statutory damages. Ontel Prod. Corp. v. Amico Int'l Corp., No. 07-CV 7356, 2008 WL 4200164 (S.D.N.Y. Aug. 19, 2008), report and recommendation adopted, No. 07-CV-7356, 2008 WL 4298504 (S.D.N.Y. Sept. 11, 2008). To determine the amount of statutory damages, the Court considers:

> "(1) the infringer's state of mind, (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties."

Hirsch, 2020 WL 5898816, at *4 (citing Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010)).

This Court notes that Plaintiff has won a variety of similar cases of copyright infringement in this Circuit. See, e.g., Prepared Food Photos, Inc. v. Trip Rest. LLC, No. 22-CV-07953 (ER), 2023 WL 2955298 (S.D.N.Y. Apr. 14, 2023) (granting a motion for default judgment where defendant impermissibly used Plaintiff's copyrighted photo on defendant's website); Prepared Food Photos, Inc. v. Shadowbrook Farm LLC, No. 22-CV-00704, 2023 WL 4199412 (N.D.N.Y. June 27, 2023) (same); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 22-CV-1270, 2023 WL 4234821 (N.D.N.Y. June 28, 2023) (same); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484, 2023 WL 4867457 (E.D.N.Y. July 31, 2023) (same). Each case involved a similar allegation of copyright infringement, and in each instance Plaintiff's default judgment motion was granted, Plaintiff was awarded damages, and the court issued a permanent injunction. These cases also adopted Plaintiff's unique damages calculation of doubling the cost of a one-year subscription to Plaintiff's services. See, e.g., Mikey's Famous Marinades Corp., 2023 WL 4867457, at *2 ("[a] doubling of the $11,988.00 amount would help deter future violations . . . Plaintiff is awarded $23,976.00 in statutory damages."); Trip Restaurant, 2023 WL 2955298, at *7 (adopting $23,976.00 as the baseline calculation for damages).

Similarly, here, this Court finds the prior cases to be informative and Plaintiff's proposed damages calculation to be persuasive. Plaintiff has a subscription model through which customers are required to pay a minimum annual subscription fee of $11,988. Motion at 12; Jones Decl. ¶¶ 4-7. Plaintiff has shown at least $11,988 in lost profits, courts have found doubling the damage amount as a useful deterrent

13

against future violations, Mikey's Famous Marinades Corp., 2023 WL 4867457, at *2, and Defendant responded to notice of the infringing conduct with an "obscene tirade[.]" Compl. ¶ 22. Considering the revenue lost by the copyright holder, the deterrent effect on the infringer and third parties, and the attitude of the Defendant, this Court believes that statutory damages of $23,976.00 are an appropriate remedy. Therefore, this Court recommends that Plaintiff be awarded $23,976.00 in statutory damages.

### C. Attorney's Fees and Costs

Plaintiff also requests $2,977.50 in attorneys' fees, and $500.32 in costs.[2] "[T]he court in its discretion may allow the recovery of full costs by or against any party ... the court may also award reasonable attorney's fee to pay the prevailing party as part of the costs." 17 U.S.C. § 505. "An award of attorney's fees to a plaintiff in a copyright action is generally appropriate where the defendant has defaulted." Martinka v. Yeshiva World News, LLC, No. 20-cv-5330, 2022 WL 4484655, at *7 (E.D.N.Y. Sept. 27, 2022) (quoting another source). When determining the amount of an award of attorney's fees in a civil case, courts use the "lodestar" method. (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co., No. 21-CV-11096 (LJL), 2023 WL 112552, at *2 (S.D.N.Y. Jan. 4, 2023). The lodestar method "estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Id. (citations omitted). The fee applicant

---

[2] This Court notes a discrepancy in the fee amount claimed. In the fee section of the Motion, Plaintiff claims attorney's fees in the amount of $2,375. Motion at 19. However, this Court will analyze the request for $2,977.50 that is noted in Motion at 20, and DeSouza Decl. at 11.

bears the burden of showing the reasonableness of the rates requested. Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011).

In the instant action, Plaintiff provides detailed contemporaneous billing records. Plaintiff seeks reimbursement for 7.4 hours of work done by CopyCat Legal in this action. DeSouza Decl. at 6,11. Having reviewed the hours submitted by DeSouza, this Court finds the hours billed to be reasonable and in line with time spent on similar cases brought by Plaintiff. See, e.g., Trip Restaurant, 2023 WL 2955298, at *7 ("The Court has performed the loadstar analysis and finds that Plaintiff's counsel reasonably expended 8.00 hours in connection with pursuing this matter."). Therefore, this Court recommends a finding that the hours billed in this matter are reasonable.

Turning to the billing rates, Plaintiff's counsel proposes a billing rate of $450 an hour for partner Daniel DeSouza and $375 an hour for associate Christine Zaffarano. DeSouza Decl. at 6. DeSouza is a partner with almost 20 years of experience, DeSouza Decl. at 4-5, and Courts in this Circuit have found his billing rate of $450 per hour to be reasonable. See, e.g., Mikey's Famous Marinades Corp., 2023 WL 4867457, at *3. This Court similarly recommends that DeSouza's proposed rate of $450 an hour be upheld as reasonable.

Zaffarano is an associate with over eight years of practice experience. DeSouza Decl. at 5. This Court recommends that the hourly rate for Zaffarano be reduced to $350 per hour. Cases cited by Plaintiff's counsel are illustrative that $350 is a more appropriate rate for the associate's hours. "A review of cases in this District . . .

15

suggest that courts have approved associate rates of $350[.]" Bass v. Diversity Inc. Media, No. 19-CV-2261 (AJN), 2020 WL 2765093, at *6 (S.D.N.Y. May 28, 2020). In McLaughlin v. IDT Energy, No. 14-CV-4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018), the court noted $350 for senior associates with six to nine years of experience was reasonable. Further, Plaintiff does not allege that Zaffarano's hourly rate has been previously upheld as reasonable by federal courts. Cf. DeSouza Decl. at 19 ("the hourly rates for both myself [DeSouza] and for CopyCat Legal's paralegals have previously been found to be reasonable by multiple federal courts."). Therefore, this Court recommends that Plaintiff be awarded a total of $2,860 in attorney's fees: 2.70 hours for DeSouza at a rate of $450 and 4.70 hours for Zaffarano at a rate of $350.

Turning to costs, Plaintiff's counsel seeks $500.32 in costs to reimburse the complaint filing fee and process server. DeSouza Decl. at 11. This Court finds these costs to be appropriate and reasonable. Therefore, this Court recommends that Plaintiff be awarded $500.32 in costs.

### D. **Permanent Injunction**

Plaintiff seeks a permanent injunction pursuant to 17 U.S.C. § 502(a). Motion at 19. "Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Plaintiff must show "(1) [it] has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering

the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction" to obtain a permanent injunction. Mikey's Famous Marinades Corp., 2023 WL 4867457, at *4 (citing Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010)). Injunctions are regularly issued in copyright actions as a part of default judgments. See, e.g., Trip Restaurant, 2023 WL 2955298, at *8; Mikey's Famous Marinades Corp., 2023 WL 4867457, at *4-5.

In the instant action, much like the similar cases brought by Plaintiff, this Court believes that a permanent injunction is an appropriate remedy. Plaintiff alleges the infringing conduct will continue to cause irreparable injury and impair the market value of Plaintiff's work. Motion at 19. Monetary damages are insufficient to remedy that harm, and in this Court's view, the public is not disserved by a permanent injunction. Therefore, this Court recommends that Plaintiff's request for a permanent injunction be GRANTED.

## RECOMMENDATION

For the foregoing reasons, this Court recommends the Motion be GRANTED in part. Specifically, this Court recommends entry of a final default judgment against Defendant and an award of $27,336.32, which consists of $23,976.00 in statutory damages, $500.32 in reimbursement for costs, and $2,860 in attorney's fees. Finally, this Court recommends Plaintiff be granted an injunction to permanently enjoin Defendant from infringing conduct.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Clarke. **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**. See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

**Plaintiff is directed to serve a copy of this Report and Recommendation on Defendant by January 19, 2024 and file proof of service by January 24, 2024.**

SO ORDERED.

DATED:   New York, New York
         January 12, 2024

                                                    *[signature: Jennifer E. Willis]*
                                                    JENNIFER E. WILLIS
                                                    United States Magistrate Judge